UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **SMS DEMAG AKTIENGESELLSCHAFT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v.   ) | Case No. 06-CV-2065 |
| ) | |
| **MATERIAL SCIENCES CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION

On May 24, 2006, this court directed the parties to file affidavits regarding venue and compliance with Rule 40.1 of the Local Rules of the Central District of Illinois.  Based upon the affidavits, and the applicable case law, this court concludes that venue is proper in this court.  In addition, this case is before the court for ruling on the Motion to Intervene (#26) filed by Terronics Development Corporation.  No opposition has been filed, so this Motion is hereby GRANTED.

## BACKGROUND

On April 5, 2006, Plaintiff, SMS Demag Aktiengesellschaft, filed its Complaint (#1) in this court against Defendant, Material Sciences Corporation.  Plaintiff stated that this court has jurisdiction based upon diversity of citizenship.  Plaintiff alleged that it is a foreign corporation and Defendant is a Delaware corporation with its principal place of business in Elk Grove Village, Cook County, Illinois.  On April 5, 2006, this court entered a text order which transferred the case to the Northern District of Illinois, Eastern Division.  This court determined that, because the Complaint stated that Defendant resided in Cook County, which is in the Northern District of Illinois, the case had to be transferred to the Northern District pursuant to 28 U.S.C. § 1391(a)(1).

After the case was transferred to the Northern District, Plaintiff filed an "Unopposed Motion to Transfer" and a Memorandum of Law in Support.  Plaintiff stated that "[v]enue was chosen by

stipulation of both Plaintiff and Defendant." Plaintiff stated that the contract at issue in this case provided that "[p]ersonal jurisdiction and venue shall be proper in a court of competent jurisdiction sitting in the State of Illinois with regard to any suit arising under this Agreement, and neither party shall challenge the exercise of personal jurisdiction or venue in any such suit." Plaintiff also attached a copy of an agreement entered into by the parties on March 10, 2006. This agreement stated that Plaintiff initiated a lawsuit against Defendant in the Southern District of Illinois on May 14, 2004. The agreement also stated that the parties desired to dismiss the lawsuit without prejudice and allow Plaintiff to re-file it in the Central District of Illinois, in consideration of the covenants and conditions contained in the agreement. The agreement provided:

> [Defendant] will not file any motion to change venue of the lawsuit from the United States District Court for the Central District of Illinois or otherwise move to transfer the case from the United States District Court for the Central District of Illinois. Additionally, in any instance wherein the court should consider transfer of the new case, sua sponte, [Defendant] will not request the court to transfer the case from the United States District Court for the Central District of Illinois.

On May 1, 2006, United States District Judge Joan H. Lefkow entered an Order which granted the unopposed motion to transfer and transferred this case to the Central District of Illinois. The case was returned to this court on May 22, 2006.

## VENUE

On May 24, 2006, this court held a telephone status conference in this case. This court had concerns regarding whether venue was proper in this court (because it appears from the Complaint that no party resides in this district and no activities related to the dispute occurred here)[1] and regarding compliance with Local Rule 40.1. At the conference, this court directed the parties to file an affidavit stating why venue is proper in this court under Rule 40.1 of the Local Rules of the Central District of Illinois. Rule 40.1(F) of the Local Rules of the Central District of Illinois provides that "[a]s part of the statement of jurisdiction, the initial pleadings in each case shall state the basis for filing in the division selected."

On May 31, 2006, Plaintiff's counsel, Kenneth P. McKay, filed his Affidavit (#28). Plaintiff's counsel stated that he did not include the statement of jurisdiction required by Rule 40.1 because of "excusable neglect." He further stated that "[t]here was no basis for filing in any specific division of the Central District under L.R. 40.1 since the filing in the Central District was done by agreement of the parties." McKay attached a copy of the March 10, 2006, agreement to his affidavit. McKay also stated that the selection of the Urbana Division "was based solely on the proximate location of Urbana with respect to Indiana, the location of Terronics Development Corporation witnesses, central to this case for the reasons set forth in the pending Motion to Intervene (emphasis in original)."

On June 9, 2006, Defendant's counsel, Christopher A. Wadley, filed his Affidavit (#30).

---

[1] This court notes that the record from the Southern District shows that United States District Judge Michael J. Reagan also had concerns about venue in the Southern District. Judge Reagan solicited jurisdictional memoranda and was satisfied that venue was appropriate in that district. Defendant later filed a motion to transfer the case from the Southern District to the Northern District, noting that Defendant was located in the Northern District and that no act or omission by either party occurred in the Southern District and no witnesses or relevant documents were located in the Southern District. Judge Reagan denied Defendant's motion to transfer.

Defendant's counsel concurred that, in the March 10, 2006, agreement, the parties agreed that Plaintiff would file this lawsuit in the Central District of Illinois. Defendant's counsel also noted that, in the License Agreement attached to Plaintiff's Complaint, the parties agreed that, in any lawsuit arising out of the License Agreement, personal jurisdiction and venue would be proper "in a court of competent jurisdiction sitting in the State of Illinois." Wadley stated that these two provisions provided the only bases for the filing of this lawsuit in the Central District. Wadley further stated that, in conformance with Defendant's agreement with Plaintiff, Defendant did not object to venue in any division of the Central District or request that the case be transferred from the Central District. McKay did note, however, that Defendant believed that the most appropriate forum to litigate this matter is the Northern District of Illinois. McKay stated that Defendant's office and principal place of business are located in the Northern District, and Defendant does not have an office in the Central District. McKay further stated that Defendant's principals negotiated aspects of the License Agreement in the Northern District and oversaw performance of the License Agreement in the Northern District. He stated that witnesses with personal knowledge of the negotiation, execution, and performance of the License Agreement are located in the Northern District and that documents related to the negotiation, execution, and performance of the License Agreement are stored in the Northern District.

Even though this court agrees with Defendant that the Northern District of Illinois appears to be the most appropriate forum for this case, this court also must agree with Plaintiff that the parties' agreement is binding.

In <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1 (1972), the United States Supreme Court held that a forum selection clause was valid and binding on the parties. In that case, a

Houston-based American corporation contracted with a German corporation. The contract included a provision which stated: "Any dispute arising must be treated before the London Court of Justice." M/S Bremen, 407 U.S. at 2-3. Subsequently, the American corporation commenced a suit in the United States District Court at Tampa, Florida, based upon damage to its property which occurred in the Gulf of Mexico. The district court refused to dismiss or stay the action, giving the forum selection clause in the contract little, if any, weight. M/S Bremen, 407 U.S. at 6-7 A divided Court of Appeals affirmed, noting, among other things, that England had no interest in or contact with the controversy other than the forum selection clause. M/S Bremen, 407 U.S. at 7-8. In vacating that judgment, the Supreme Court agreed with the six dissenting members of the Court of Appeals "that far too little weight and effect were given to the forum clause in resolving this controversy." M/S Bremen, 407 U.S. at 8.

  The Supreme Court recognized that forum selection clauses had historically not been favored by American courts, stating that "[m]any courts, federal and state, have declined to enforce such clauses on the ground that they were 'contrary to public policy,' or that their effect was to 'oust the jurisdiction' of the court." M/S Bremen, 407 U.S. at 9-10. The Court concluded that this was "hardly more than a vestigial legal fiction" which "has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets." M/S Bremen, 407 U.S. at 12. The Court therefore concluded that the forum clause should control absent a strong showing that it should be set aside because "enforcement would be unreasonable and unjust" or because "the clause was invalid for such reasons as fraud or overreaching." M/S Bremen, 407 U.S. at 15. The Court noted that there was nothing in the record before it that would support a refusal to enforce the forum clause. M/S Bremen, 407 U.S. at 15. The Court also stated that

"where it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." M/S Bremen, 407 U.S. at 16-17.

The Seventh Circuit has subsequently stated that "federal courts are friendly to the use of forum selection clauses to determine which federal district court shall host a case." IFC Credit Corp. v. Aliano Bros., Inc., 437 F.3d 606, 608 (7th Cir. 2006). A forum selection clause should be treated "basically like any other contractual provision" and should be enforced "unless it is subject to any of the sorts of infirmity, such as fraud and mistake, that justify a court's refusing to enforce a contract." IFC Credit Corp., 437 F.3d at 610, quoting Northwestern Nat'l Ins. Co. v. Donovan, 916 F.2d 372, 375 (7th Cir. 1990). The Seventh Circuit has made clear that, where the forum selection clause is valid, there is a strong presumption against transfer. IFC Credit Corp., 437 F.3d at 613. The Seventh Circuit stated:

> The presumption can be overcome, as we explained in Northwestern, only 'if there is inconvenience to some third party . . . or to the judicial system itself,' as distinct from inconvenience to the party seeking transfer. That party's inconvenience has no weight if the clause is valid, 916 F.2d at 378, because the party waived any objection based on inconvenience to it by agreeing to the clause.

IFC Credit Corp., 437 F.3d at 613, quoting Northwestern, 916 F.2d at 378.

In this case, there is no dispute that the contract at issue contained a forum selection clause, which provided that suit could be brought in any court of competent jurisdiction sitting in the State

of Illinois, which includes this court. In addition, the parties specifically agreed in their March 10, 2006, agreement that the case would be filed in the Central District of Illinois. While Waddell's affidavit states facts which show that the Northern District of Illinois would be a more convenient forum, there is nothing indicating that the Central District of Illinois would be an inconvenient forum for third parties or the judicial system itself. See IFC Credit Corp., 437 F.3d at 613. Because Defendant entered into the agreements which allowed Plaintiff to bring the action in this court, Defendant cannot assert its own inconvenience. See IFC Credit Corp., 437 F.3d at 613. Accordingly, based upon the agreements of the parties, venue is proper in this court.

## INTERVENTION

On May 23, 2006, Terronics Development Corporation (Terronics) filed a Motion to Intervene under FRCP 24(a)(2) (#26). Terronics attached a Complaint to Intervene, with attached exhibits, to the Motion. Terronics also filed a Memorandum of Law in Support (#27). No response to the Motion has been filed. Therefore, based upon Rule 7.1(B)(2) of the Local Rules of the Central District of Illinois, this court presumes there is no opposition.

This court further concludes that Terronics has met the requirements for intervention under Rule 24(a)(2) of the Federal Rules of Civil Procedure. Accordingly, its Motion to Intervene (#26) is hereby GRANTED.

IT IS THEREFORE ORDERED THAT:

(1) Venue is proper in this court.

(2) Terronics' Motion to Intervene (#26) is GRANTED. The clerk is directed to file the Complaint to Intervene attached to the Motion, including the attached exhibits. The parties are directed to file their responses to the Complaint to Intervene within twenty-one (21) days.

(3) A Rule 16 conference will be scheduled in this case before Magistrate Judge David G. Bernthal.

ENTERED this 14th day of June, 2006

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE