UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **SMS DEMAG AKTIENGESELLSCHAFT,** )<br>)<br>**Plaintiff,** )<br>v. )<br>)<br>**MATERIAL SCIENCES CORPORATION,** )<br>)<br>**Defendant.** )<br>_____)<br>)<br>**TERRONICS DEVELOPMENT** )<br>**CORPORATION,** )<br>       **Intervenor-Plaintiff/** )<br>       **Counter-Defendant** )<br>v. )<br>)<br>**MATERIAL SCIENCES CORPORATION,** )<br>)<br>       **Intervenor-Defendant/** )<br>       **Counter-Plaintiff** ) | Case No. 06-CV-2065 |

## OPINION

This case is before the court for ruling on the Motion for Preliminary Injunction Hearing to Require Re-assignment of Technology (#48) filed by Terronics Development Corporation (Terronics). Following this court's careful review of the arguments of the parties and the documents provided by the parties, this court concludes that a hearing is necessary regarding Terronics' request for a preliminary injunction. Accordingly, Terronics' Motion for Preliminary Injunction Hearing (#48) is GRANTED. However, this court further concludes that, based upon the record in this case, Terronics has not shown the need for any urgency is setting the matter for hearing. This court notes that the earliest date it has available for a hearing, due to this court's trial schedule, is May 30, 2007. Therefore, this case is scheduled for a telephone status conference on March 29, 2007, at 4:30 p.m. A hearing will be scheduled on Terronics' request for a preliminary injunction at a time convenient

for the parties and this court, which will be on or after May 30, 2007.

## BACKGROUND

On April 5, 2006, Plaintiff, SMS Demag Aktiengesellschaft (SMS Demag) filed a Complaint (#1) against Defendant, Material Sciences Corporation (MSC). SMS Demag alleged that MSC breached various agreements between the parties regarding "powder cloud" technology. SMS Demag stated that it is active worldwide in engineering, building and selling rolling mills and processing lines to the metal industry. It further stated that it was therefore interested in marketing powder coating lines as part of its product range. SMS Demag described "powder cloud" technology as employing "electrostatic powder coating equipment to deposit metallic material by plating or 'coating' one material layer upon another." SMS Demag alleged that much of the technology at issue had been developed by Terronics, a third party to this matter. SMS Demag sought significant damages from MSC for breach of contract and also sought damages for breach of warranties and representations under the agreement. On April 19, 2006, MSC filed its Answer (#7) to the Complaint.

On June 14, 2006, this court entered an Opinion (#31) in which this court concluded that venue was proper in this court. This court also granted Terronics' Motion to Intervene (#26). Terronics' Intervenor Complaint (#32) against MSC was then filed in this court. Terronics subsequently filed an Amended Complaint (#40) against MSC. On August 28, 2006, MSC filed a Answer to Amended Complaint and Counterclaim against Terronics (#44). Terronics filed its Answer to Counterclaim (#45) on September 18, 2006.

On October 16, 2006, Terronics filed a Motion for Leave to File Second Amended Complaint (#46). Terronics stated that it was seeking to add an additional count asking for injunctive relief

compelling MSC to transfer the technology back to Terronics. On October 17, 2006, Terronics also filed a Motion for Hearing Requesting Preliminary Injunction to Require Re-assignment of Technology (#48) and a Memorandum of Law in Support (#49). On October 23, 2006, Magistrate Judge David G. Bernthal entered an Order (#50) which denied Terronics' Motion for Leave to File Second Amended Complaint. Judge Bernthal ordered Terronics to show cause within 21 days of the Order why its Amended Complaint should not be dismissed for want of jurisdiction. On October 30, 2006, this court entered a Text Order which granted MSC's Motion for Extension of Time to File Response to Terronics' Motion for Preliminary Injunction Hearing. MSC was therefore allowed to file its response after Terronics was granted leave to file its Second Amended Complaint.

On November 3, 2006, Terronics filed its Response to Order to Show Cause (#52). Terronics stated that it had revised its proposed Second Amended Complaint to properly allege diversity jurisdiction. Terronics attached a copy of its new proposed Second Amended Complaint. On December 6, 2006, Judge Bernthal entered an Order (#53) which allowed Terronics to file its Second Amended Complaint, and the Second Amended Complaint (#54) was therefore filed in this court.

In its Second Amended Complaint (#54), Terronics alleged that it has been a pioneer in the development of electrostatic deposition of liquid and powder materials to a moving substrate for more than 20 years. Terronics further alleged that more than 15 United States patents and more than 20 foreign patents have been issued to Terronics covering its inventions in the field of electrostatic deposition. Terronics alleged that, on April 1, 1994, it entered into a Technology License Agreement with MSC in which it granted to MSC world wide exclusivity for electrostatically applying powder materials that adhere by chemical reaction to both continuous and individual substrates.

Terronics alleged that Terronics and MSC subsequently entered into a second Technology License Agreement. Terronics alleged that this agreement was effective August 1, 1996, and granted to MSC "the exclusive, worldwide right and license to make, have made, use, sell, offer to sell, and import the Technology (as therein defined)." The agreement defined "technology" as including licensed patents, patent applications and future patents. Terronics alleged that Terronics and MSC shortly thereafter negotiated a third agreement, which it referred to as a Technology Assignment and Transfer Agreement. Terronics alleged that there was a full and complete agreement of the parties on the terms and conditions of this third agreement, but that the parties neglected to execute the agreement. Terronics alleged that the parties validated the agreement by actual performance and, in addition, MSC ratified the agreement in an e-mail dated September 13, 2002. Terronics alleged that, in its third agreement with MSC, it "agreed to assign all of its patents and pending applications, throughout the world relating to the Technology to MSC, and MSC agreed to maintain all of such patents and pending applications throughout the world."

Terronics also alleged that it executed two promissory notes in favor of MSC. Terronics alleged that MSC has refused to make payments due under the terms of MSC's agreement with Terronics and that, on May 6, 2002, Terronics gave formal notice of MSC's material breach of the agreement. Terronics alleged that, notwithstanding the numerous breaches by MSC, "MSC has continued to represent to third parties, inclusive of SMS Demag AG, that MSC owns the technology" under the terms of the third agreement. Terronics alleged that, in March 2006, MSC, through its patent counsel, discontinued its support for the patent prosecution of international patents. Terronics also stated that, on August 28, 2006, MSC answered Terronics' Amended Complaint in this matter and denied that the third agreement between Terronics and MSC was

enforceable. Terronics alleged that, as a matter of law, MSC has terminated its license with Terronics. Terronics further alleged that, under the terms of both the second and third agreements between Terronics and MSC, termination of the agreement requires MSC to "return to Terronics all the Technology capable of being returned." Terronics alleged that this required that the patents assigned to MSC by Terronics be re-assigned to Terronics. Terronics alleged that "MSC has not returned the Technology to Terronics and Terronics has been damaged, accordingly, in not having had the capacity to license the Technology to other parties because of the clouded title."

In Count I of the Second Amended Complaint, Terronics sought damages for breach of contract in the amount of $2,153,400 and an order compelling MSC to transfer the Technology back to Terronics, including re-assignment of the patents to Terronics. In Count II, Terronics sought, in the alternative, compensatory damages for quantum meruit. In Count III, Terronics sought, in the alternative, compensatory damages for unjust enrichment. In Counts II and III, Terronics also requested that this court impose a constructive trust on the listed "patents and/or intellectual property such that all proceeds for licensing and/or selling this technology is proportioned such that Terronics derives its fair share." In Count IV, Terronics again alleged a breach of contract and requested a preliminary injunction "compelling MSC to transfer the Technology back to Terronics, including re-assignment of the patents to Terronics."

On January 10, 2007, MSC filed its Answer to Second Amended Complaint and Counterclaim (#56) and its Memorandum in Opposition to Terronics' Motion for Preliminary Injunction Hearing (#57), with attached exhibits.

ANALYSIS

In its Motion for Preliminary Injunction Hearing (#48), Terronics argued that MSC no longer

has a claim to the Technology and that it will be irreparably harmed if this court does not direct the re-assignment of the patents currently held by MSC back to Terronics. In its Memorandum in Support of its Motion (#49), Terronics again noted that, in March 2006, "MSC notified Terronics that MSC was no longer paying patent renewal and/or maintenance fees on the Technology." Terronics stated that, notwithstanding that MSC intends to abandon the legal rights to the Technology, MSC has not and will not re-assign the Technology without the intervention of the court. Terronics argued that it has a reasonable likelihood of success on the merits pertaining to ownership of the technology and will be irreparably harmed if this court does not compel the transfer of the technology back to Terronics because title to the technology will be clouded. Terronics also argued that the issuance of an injunction will serve the public interest because "any interested party who could assist in the development of this useful technology would demand a clear title to the patented subject matter."

In its Opposition to Terronics' Motion for Preliminary Injunction Hearing (#57), MSC set out its own statement of the facts. MSC stated that the parties produced several draft agreements of the Technology Assignment and Transfer Agreement, but never executed any of the draft agreements. MSC stated that the agreement generally provided for the assignment of Terronics' patents to MSC.[1] MSC stated that, although the parties never executed any particular draft of the Assignment and Transfer Agreement, Terronics did assign several of its patents to MSC and MSC made payments to Terronics in return.[2] MSC stated that, in April 2002, its final fixed fee payment

---

[1] MSC pointed out, however, that the agreement provided that MSC would grant back to Terronics exclusive rights to the Technology in two particular fields.

[2] MSC does not appear to be disputing that at least some provisions of this agreement are enforceable based upon performance.

became due under the terms of the agreement. MSC stated that it exercised its discretion to set off that amount from the amount due on an existing promissory note that Terronics had previously executed. MSC stated that Terronics disputed MSC's right to set off the final fixed fee payment against the promissory note. Therefore, in May 2002, Terronics notified MSC that it considered the agreement to be "terminated." MSC stated that, in December 2002, it began instructing its attorney to abandon certain patents as application and/or maintenance fees became due. MSC stated that its attorney mailed correspondence to Terronics' majority shareholder and advised him of MSC's instructions. MSC stated that, on at least one occasion, Terronics notified MSC's attorney that it desired to pay the requisite fee to prosecute the application. MSC stated that, on most occasions, Terronics expressed no desire to maintain expiring patents and the patents were abandoned.

MSC argued that Terronics is not entitled to a preliminary injunction based upon these facts. MSC contended that Terronics is actually seeking a adjudication of the merits of its claim, rather than to protect the status quo while the case proceeds. MSC argued that, in this case, "the status quo is the manner in which the parties have been operating since, at least, December 2002, when MSC began advising Terronics of its intent to abandon certain Technology-related patents." MSC argued that, under the terms of the Assignment and Transfer Agreement relied upon by Terronics, MSC is required to "reassign" the patents to Terronics only if the agreement was "terminated by MSC." MSC argued that it has not terminated the agreement. MSC also argued that, if MSC is ordered to reassign the patents to Terronics, Terronics will be unjustly enriched by receiving not only the benefit of MSC's fixed fees under the agreement and MSC's maintenance of the patents during the life of the agreement, but will also get back the patents it assigned over as part of the consideration it offered under the contract. MSC contended that requiring MSC to reassign the patents to

Terronics even though it has satisfied all of its payment obligations would result in a windfall for Terronics. MSC also argued that Terronics has not shown that it will suffer irreparable harm if the preliminary injunction is not entered, noting that, since at least December 2002, the parties have been operating under circumstances whereby MSC notifies Terronics if MSC intends to abandon patents as maintenance or other fees become due. Therefore, Terronics can provide MSC with appropriate funding to preserve any patent it desires to maintain. MSC argues that there is no reason for the court to prematurely reassign the patents to Terronics, prior to a full trial on the merits.

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, <u>by a clear showing</u>, carries the burden of persuasion." <u>Goodman v. Ill. Dep't of Fin. & Prof'l Regulation</u>, 430 F.3d 432, 437 (7th Cir. 2005) (emphasis in original), <u>quoting Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997). "The granting of a preliminary injunction depends on proof of irreparable harm if the injunction is withheld as well as on the likelihood of success on the merits when the case is fully tried." <u>Ty, Inc. v. GMA Accessories, Inc.</u>, 132 F.3d 1167, 1172 (7th Cir. 1997). Generally, an evidentiary hearing is held to give the moving party the opportunity to present evidence sufficient to meet its burden to show it is entitled to a preliminary injunction. <u>See</u>, <u>e.g.</u>, <u>Goodman</u>, 430 F.3d at 435; <u>Electro-Motive Diesel, Inc. v. WI-Tronix, LLC</u>, 2006 WL 1594041, at *1 (N.D. Ill. 2006). In fact, the Seventh Circuit has stated that if "genuine issues of material fact are created by the response to a motion for a preliminary injunction, an evidentiary hearing is indeed required." <u>Ty, Inc.</u>, 132 F.3d at 1171.

This court notes that MSC has argued that Terronics is not entitled to a preliminary injunction in this case, but has not specifically argued that no hearing should be held. This court concludes that an evidentiary hearing is necessary to give Terronics the opportunity to meet its

burden to prove that it is entitled to a preliminary injunction. However, this court notes that the documents and argument presented by Terronics clearly show that the dispute between the parties is of long-standing duration. Terronics itself stated that it gave formal notice to MSC of MSC's material breach of contract in May 2002. Further, Terronics is basing its claim for injunctive relief, at least in part, on the fact that MSC notified it that "MSC was no longer paying patent renewal and/or maintenance fees on the Technology." According to Terronics, this occurred in March 2006. However, according to MSC, it has been notifying Terronics that it would not be paying fees to maintain some of the patents since at least December 2002. Whichever scenario is correct, it is clear that there was no sudden emergency when Terronics filed its Motion for Preliminary Injunction Hearing on October 17, 2006. In addition, because of this court's trial schedule, an immediate hearing cannot be scheduled. Therefore, this case will be scheduled for a telephone status conference so that a hearing may be scheduled.

IT IS THEREFORE ORDERED THAT:

(1) Terronics Motion for Preliminary Injunction Hearing (#48) is GRANTED.

(2) This case is scheduled for a telephone status conference on March 29, 2007, at 4:30 p.m., so that a hearing on Terronics' request for a preliminary injunction may be scheduled at a time convenient for the parties and this court. However, the earliest date this court has available for a hearing is May 30, 2007.

(3) This case remains scheduled for a final pretrial conference on November 16, 2007, and for a jury trial on November 26, 2007.

ENTERED this 15th day of March, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY

CHIEF U.S. DISTRICT JUDGE